Morris Koscove v. Commissioner. Sam Koscove v. Commissioner.
Koscove v. Commissioner
Docket Nos. 37962, 37964.
United States Tax Court
1954 Tax Ct. Memo LEXIS 262; 13 T.C.M. (CCH) 245; T.C.M. (RIA) 54088; March 26, 1954
*262 1. Held: Respondent did not err in including in the net worth statements an item of $30,000 as accounts payable. 2. Held: Deficiencies in petitioners' income tax for the taxable years were due to fraud with intent to evade tax. George T. Evans, Esq., 550 Equitable Building, Denver, Colo., for the petitioners. Everett E. Smith, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The parties to these proceedings have stipulated that the only issues for decision are (1) should $30,000 accounts payable be included in the liabilities of the partnership of Sam and Morris Koscove as of December 31, 1940, and (2) are petitioners liable for fraud for any of the years 1941, 1942, 1945 and 1946. The income tax deficiencies [1] of the petitioners and additions to tax thereon for fraud as finally determined by the respondents are as follows: Sam Koscove
Addition
Tax
to Tax
Year
Deficiency
for Fraud
Total
1941
$8,797.54
$4,398.77
$13,196.31
1942
1,513.08
756.54
2,269.62
1944
64.00
None
64.00
1945
6,553.11
3,276.56
9,829.67
1946
2,523.86
1,261.93
3,785.79
Morris Koscove
1941
$8,637.10
$4,318.55
$12,955.65
1942
1,475.33
737.67
2,213.00
1945
5,704.93
2,852.47
8,557.40
1946
1,918.81
959.41
2,878.22
*263 The foregoing tax deficiencies were determined on the basis of the increase in net worth plus expenditures method of reconstructing net income and are conceded by the petitioners to be correct, except those with respect to the year 1941. Findings of Fact Part of the facts are stipulated and are so found. During each of the years involved, and for many years prior thereto, petitioners were members of the partnership of Sam and Morris Koscove, doing business under the name of Canon Auto Wrecking Company. The partnership dealt in junk and its principal places of business were Canon City and Colorado Springs, Colorado. The partnership returns for each of the years 1941 through 1946 were filed with the collector of internal revenue for Colorado. Each of the petitioners was entitled to receive one-half of the profits of their partnership and required to share one-half of any partnership losses. *264 Each of the petitioners lived in Colorado during the years 1941 through 1946 and each filed his individual income tax returns for those years with the collector of internal revenue for Colorado. Sol Koscove and Myer Koscove (hereinafter sometimes called Sol and Myer) were the younger brothers of the petitioners. Following their graduation from high school in 1934 and 1933, respectively, Sol and Myer went to work buying scrap metal with funds furnished by the partnership and hauling such scrap to the junk yard of the petitioners, where it was all piled in one pile. It was the tacit understanding among the four brothers that the younger brothers would be entitled to a share in the proceeds when the scrap should be sold. In the meantime, Sol and Myer drew from the business enough to live on and to support their mother with whom they lived. Prior to 1941, the younger brothers had received as such no part of the proceeds of the scrap that had been sold. In February, 1941, Sol drew out from a bank account of the partnership the sum of $15,000, having previously told petitioner Morris Koscove of his intention to make a drawing on that account. In July, 1941, Myer drew out from the same *265 bank account the sum of $15,000. Both Sol and Myer deemed the amounts so withdrawn to be part of their share of the proceeds of scrap already sold. Though petitioners had not expressly authorized such withdrawals, they did not ask their younger brothers to restore the amounts withdrawn. Petitioners' total obligation to Sol and Myer was not discharged by the above-mentioned withdrawal of $30,000. During the years involved herein, neither the partnership nor either of the two petitioners maintained accounts and records from which a correct determination could be made of the income of the partnership or the individual income of either petitioner. Accordingly, respondent determined the net income of each petitioner for the respective years involved by preparing a comparative net worth statement for the partnership and by adding to the respective yearly increases in net worth, as adjusted, a figure representing personal living expenses. The comparative statement as revised was agreed by the parties to be correct with one reservation, the exception being an item of accounts payable at the end of the year 1940 in the amount of $30,000. The figures for living expenses also were agreed upon *266 by the parties. Upon learning the circumstances attending, and the fact of, the withdrawals of the sum of $30,000 by the younger brothers in 1941 from a partnership bank account, respondent treated such amount as part of a liability, undetermined as to total amount, but being at least $30,000 and existing at the end of 1940. Respondent entered the amount of $30,000 on the net worth statement of the partnership as "Accounts Payable, Sol and Myer Koscove." By including the aforesaid item of accounts payable in the comparative net worth statement of the partnership, respondent determined that petitioners' correct share of partnership income for 1941, including agreed living expenses, was $29,171.82 for Sam Koscove and $29,171.83 for Morris Koscove. Each of the petitioners reported a net income of $2,222.25 for 1941. The following is a schedule of the petitioners' correct share of partnership income, including agreed living expenses, for those years subsequent to 1941 for which years fraud penalties have been asserted and are at issue: Share of
Share of
Years
Sam Koscove
Morris Koscove
1942
$ 9,945.85
$ 9,945.85
1945
19,617.85
19,617.85
1946
12,143.66
12,143.66
*267 Each of the two petitioners reported his share of partnership income for the years 1942, 1945 and 1946 to be $4,607.40, $2,854.50, and $3,406.53, respectively. The distributive share of partnership income was the only income reported by either of the petitioners for 1942. For 1945 and 1946, petitioner Sam Koscove reported no income other than his reported distributive share of partnership income. Morris Koscove's adjusted gross income for 1945 and 1946 as reported was $4,784.28 and $5,609.19, respectively. The inventory valuation figures set forth in the partnership returns for the years 1941 through 1946 were deliberately understated by petitioners. Respondent employed these figures in his net worth computation. Subsequent to the taxable years herein involved, respondent's agents made a thorough inquiry into petitioners' affairs for the purpose of determining the latters' tax liabilities. During the course of that investigation, petitioners made false and misleading statements when questioned by respondent's agents in regard to the disposition and whereabouts of certain negotiable instruments. These instruments, including three cashier's checks in the total amount of $12,000 *268 and a bank draft in the amount of $12,000, were subsequently included as as sets in the stipulated net worth statement. If respondent had accepted as true petitioners' false statements with regard to the aforesaid instruments, petitioners' income tax deficiencies for one or more of the years here involved would have been substantially less than those finally determined and agreed upon. At an informal conference with respondent's representatives in May, 1949, petitioners claimed a liability to their father existed. The effect of accepting the existence of the claimed liability would have been to reduce the tax liability of the petitioners for the years then under examination and here in question. To support the claimed existence of such a liability, petitioners repudiated the inconsistent statements contained in affidavits given by each of them in September, 1947. Respondent's inclusion in his computation of the partnership's net worth at the end of 1940 of the sum of $30,000 as a liability did not have the effect of rendering incorrect the partnership's reconstructed net income figure for the year 1941. Part of the deficiencies determined against each petitioner for each of *269 the taxable years 1941, 1942, 1945 and 1946 was due to fraud with intent to evade tax. Opinion VAN FOSSAN, Judge: The relationship between the partnership of Morris and Sam Koscove and the two younger brothers, Sol and Myer, is not susceptible of exact definition. The younger men were not members of the partnership. Though not based on a definite consideration in money, it was apparently some sort of employment. The two boys were engaged in the collection and the purchase of scrap metal and junk for the partnership. No wages had been agreed upon nor indeed was there any definite commitment for payment for services rendered. One fact stands out, however. There was implicit in the situation a commitment that the partnership would do what was right by the boys. This appears in the fact that the boys were furnished with funds from the firm bank account needed in the purchasing of junk; also they drew on the firm bank account for living expenses, including the care of their mother. This commitment stands out boldly in the fact that in January, 1941, Sol, having told Morris of his intention, was permitted to draw $15,000 on a check signed by himself and without apparent resistance or *270 objection. Likewise, when Myer followed Sol's precedent and drew and equal amount. Though not expressly authorized to draw the same, there is nothing in the record suggesting disapproval by the older brothers. There was apparently also no thought of requiring repayment. Whatever be the exact legal nature of the relationship between the partnership and the two boys, it was of sufficient definiteness to create a debtorcreditor relation. It appears very clearly that the firm of Morris and Sam considered itself liable to the two younger brothers for at least the amount so withdrawn from the firm bank account. In this state of the record, the least we can say is that the petitioners, who had the burden of proof, have not established that the respondent erred when he included in his net worth statement of December 31, 1940 an account payable in the amount of $30,000. This is not a question of the niceties of proper accounting practice. The parties stipulated that neither the petitioners nor the partnership had maintained records and accounts sufficient for the determination of their correct income. It is a practical question, - did the partnership of Morris and Sam owe Sol and Myer $30,000 *271 on December 31, 1940? We believe, on the record made, that it should be held that on the basic date the debt existed, and accordingly we hold for respondent on the first issue. The conclusion of fact set out in our findings effectively disposes of the fraud issue. We are satisfied, and the evidence is clear and convincing, that both petitioners filed false and fraudulent returns for all the taxable years with intent to evade tax. This conclusion as to the intent of the petitioners is based on no single fact but on the whole record and the necessary inferences to be drawn therefrom. Among the facts here evidencing a fraudulent purpose are the recurring fact of large amounts of unreported income and the absence of any plausible excuse therefor; the many misleading and contradictory statements to respondent's agents; the admitted fact that the partnership inventories were deliberately understated in an attempt to deceive the local tax officials and to evade local taxes. This naive explanation is certainly pregnant with the admission that they had similar intentions as to Federal taxes. In our judgment, on the record before us, we are impelled to the conclusion above stated. Decisions *272 will be entered under Rule 50. Footnotes
1. The originally determined deficiencies, exclusive of additions to the tax for fraud, were as follows: ↩
Sam
Morris
Year
Koscove
Koscove
1941
$11,853.88
$11,681.65
1942
10,603.36
10,482.82
1944
69.00
None
1945
7,767.54
6,872.54
1946
2,536.13
1,929.79